**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

GINO VELEZ SCOTT,

            Petitioner,

vs.                                   Case No.:    3:11-cv-1144-J-32PDB
                                                          3:06-cv-906-J-32HTS
                                                          3:03-cr-343-J-32PDB

UNITED STATES OF AMERICA,

            Respondent.

_____/

## <u>ORDER</u>

    This case is before the Court on Petitioner Gino Velez Scott's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 1)[1] and Memorandum of Law (Doc. 3).  The Court appointed counsel for Petitioner in this matter.  (Crim. Doc. 141).  On July 9, 2014, the Court directed counsel for Petitioner to file a supplemental brief explaining why the Court should not dismiss Petitioner's § 2255 motion as second or successive, or alternatively, why Petitioner's Rule 60(b)(3) motion is not untimely.  Petitioner and the government have since filed several supplemental briefs.  (Docs. 26, 31, 34).  Having reviewed the parties' filings, the Court is satisfied that it has been briefed on the matter and is prepared to rule.  Upon review of the case law, the Court concludes that Petitioner's § 2255 motion is second or successive and is due to be dismissed without prejudice to his right to seek permission from the

---

[1]    Citations to Petitioner's criminal case file, <u>United States of America vs. Gino Velez Scott</u>, 3:03-cr-343-J-32HTS-2, are denoted as "Crim. Doc. ___."  Citations to Petitioner's current § 2255 case file, 3:11-cv-1144-J-32PDB, are denoted as "Doc. ___."

Eleventh Circuit Court of Appeals to file a second motion to vacate.   However, Petitioner's alternative motion for relief from judgment on his initial § 2255 motion, pursuant to Fed. R. Civ. P. 60(b)(3), is appropriately tailored as such and due to be granted, with further instructions to follow.

## I.    Background

On June 30, 2004, a jury found Petitioner guilty of one count of conspiracy to possess five kilograms or more of cocaine with intent to distribute.  (Crim. Doc. 89). Because of prior convictions, the Court sentenced Petitioner to life in prison.  (Crim. Doc. 109).   Petitioner appealed to the Eleventh Circuit Court of Appeals, which affirmed Petitioner's conviction in 2005.  United States v. Scott, 136 F. App'x 273 (11th Cir. 2005).  The Supreme Court denied Petitioner's request for certiorari review.

In 2006, Petitioner filed an initial motion to vacate under 28 U.S.C. § 2255. Among other things, Petitioner alleged that counsel rendered ineffective assistance by failing to investigate and uncover further evidence that would have impeached one of the government's witnesses against him, an ex-convict-turned-DEA-informant named Freddy Pena.  The Court denied Petitioner's motion to vacate on April 16, 2008, explaining that trial counsel elicited damaging admissions from Pena on cross-examination relating to his prior heroin conviction and status as a paid informant, but that Petitioner failed to show that further investigation would have yielded any additional impeachment.  (Case No. 3:06-cv-906-J-32HTS, Doc. 12 at 5-7).  The Court

therefore concluded that Petitioner had failed to show prejudice under <u>Strickland v. Washington</u>.[2]   For its part, the United States argued:

> What would further investigation have disclosed? … [T]he defendant must provide some evidence that had defense counsel conducted a more thorough investigation of the witness, something of use to the defense would have been uncovered.  The defense has had more than two years to suggest something that further investigation would have turned up that might have made a difference in the trial.  The petition has nothing on this topic…  Notably, even if the defense had found a <u>Brady</u> or <u>Giglio</u> violation during these intervening years, the burden still would be on the defendant to show that, had the evidence been disclosed, a reasonable probability exists that the outcome of the trial would have been different.

(Case No. 3:06-cv-906-J-32HTS, Doc. 8 at 8).  Thus, the United States contended that no prejudice resulted from trial counsel's abridged investigation of Pena because there was no further impeachment evidence that counsel could have uncovered.[3]

But there was more impeachment evidence.  In April 2011, the United States notified Petitioner that it had information about Pena about which it claimed to have been unaware during Petitioner's trial and initial § 2255 proceeding.  The United States disclosed to Petitioner that: (1) Pena lied to investigators about the source of heroin that was the subject of his 1996 arrest for heroin trafficking, (2) in October 2001, Pena and a DEA confidential source stole 1.5 kilograms of cocaine from a drug dealer who was the target of a DEA investigation; (3) in November 2001, the DEA's

---

[2]   <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) (to obtain relief from a conviction or sentence due to the ineffective assistance of counsel, a petitioner must show both that counsel performed deficiently, and that such performance prejudiced the petitioner.).

[3]   Because the Court declined to rule on whether defense counsel had performed deficiently under <u>Strickland</u>, the Court's decision that Petitioner had not shown prejudice was dispositive.  (Case No. 3:06-cv-906-J-32HTS, Doc. 12 at 5-7).

Tampa office activated Pena as a confidential source, but Pena did not disclose his participation in the theft of cocaine one month earlier; (4) sometime in 2002, DEA agents learned about the theft of cocaine and confronted Pena about it, and Pena admitted to the theft; and (5) in June 2002, the Tampa DEA's office moved Pena to "restricted use," with one Assistant United States Attorney commenting that he would be hesitant to use Pena again in the future.  Later in 2002, the Jacksonville DEA's office activated Pena anyway for the investigation against Petitioner. Petitioner was not aware of any of the aforementioned information during his trial or first § 2255 proceeding, nor did the United States disclose it during pretrial discovery.

The United States made the belated disclosures after an Assistant United States Attorney from Massachusetts alerted the Jacksonville United States Attorney's Office to the information.  The Massachusetts prosecutor was researching Brady material on Pena because his office was using Pena as a witness in one of its own trials, and discovered the above information while reviewing the files of the DEA's Tampa office.   Another prosecutor with the Jacksonville office had also disclosed this same impeachment evidence in another trial where Pena was a witness[4], but the prosecutor in Petitioner's case averred that he was not actually aware of this information until learning about it in March or April of 2011.   The prosecutor maintains that he notified Petitioner as soon as he learned about the information.

---

[4]        That case was United States of America vs. Don Robert Brown, Jr., 3:03-cr-238-J-32MCR (M.D. Fla.).

Based on the new disclosures, Petitioner filed a second § 2255 motion to vacate on November 17, 2011. (Doc. 1).  Petitioner asserts that the prosecution suppressed evidence in Petitioner's trial and subsequent collateral proceeding on four occasions: (1) by failing to comply with the Court's standing pretrial discovery order; (2) by representing that all <u>Brady</u> material had been turned over when trial counsel protested that the United States' disclosures were incomplete (<u>See</u> Crim. Doc. 96 at 51-53); (3) when the United States elicited testimony from Pena at trial that Pena had never provided false or misleading information to the DEA; and (4) when the United States argued, in response to Petitioner's initial § 2255 motion, that Petitioner could not show prejudice from trial counsel's failure to adequately investigate Pena because there was no further impeachment evidence to uncover.  (<u>See</u> Doc. 3 at 13-14).  Petitioner has not obtained permission from the Eleventh Circuit Court of Appeals to file a second or successive motion to vacate, as is typically required by 28 U.S.C. §§ 2255(h) and 2244(b).  Petitioner contends that the disclosures revealed <u>Brady</u> and <u>Giglio</u> violations, and that the Court should not consider the current motion to vacate "second or successive" because the claims could not have been raised in Petitioner's initial motion given that the United States withheld the evidence until after the Court had already ruled on his first motion to vacate.

Alternatively, Petitioner requests that if the Court finds that his current motion to vacate is second or successive, then it should reopen the judgment in the initial § 2255 case pursuant to Rule 60(b)(3) of the Federal Rules of Civil Procedure. <u>See</u> Fed. R. Civ. P. 60(b)(3).  Petitioner points out that the April 2011 disclosures

contradict the United States' representation in the initial § 2255 case that further investigation by trial counsel would not have revealed any additional impeachment evidence against Pena.  Petitioner argues that the United States' representation in the first § 2255 case – a representation that now appears to have been untrue – establishes that the United States committed fraud, misrepresentation, or misconduct warranting a revisitation of the second ineffective assistance of counsel claim raised in Petitioner's first motion to vacate.

## II.     Discussion

### A.  Petitioner's Motion to Vacate is "Second or Successive"

The Court asked the parties why it should not dismiss the current motion to vacate as "second or successive" under the authority of Tompkins v. Sec'y, Dep't of Corrections, 557 F.3d 1257 (11th Cir. 2009), Stewart v. United States, 646 F.3d 856 (11th Cir. 2011), and Maye v. United States, 2014 WL 99303 (M.D. Fla. Jan. 9, 2014). (See Doc. 23).  The parties have since thoroughly briefed the Court on the matter. Petitioner's arguments against regarding the current motion as "second or successive" are reasoned and persuasive.  Were the Court writing on a blank slate it might be inclined to agree with Petitioner.  Indeed, because Petitioner could not possibly have discovered the factual predicate underlying the current Brady/ Giglio claims before he filed his initial § 2255 motion (because the government was withholding it), Petitioner has not evinced any intent to abuse the writ.  And as Petitioner points out, the Supreme Court has indicated that pre-AEDPA "abuse of the writ" doctrine may still inform whether a motion should be considered "second or

successive." <u>See</u> <u>Panetti v. Quarterman</u>, 127 S. Ct. 2842, 2853 (2007); <u>but see</u> <u>Magwood v. Patterson</u>, 130 S. Ct. 2788, 2799 (2010) ("The dissent similarly errs by interpreting the phrase 'second or successive' by reference to our longstanding doctrine governing abuse of the writ.   AEDPA modifies those abuse-of-the-writ principles and creates new statutory rules under § 2244(b)."). "But the judicially-created equitable rules set forth and applied in [pre-AEDPA case law] have since been largely superseded by the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA')." <u>Ellis v. United States</u>, ____ F. App'x ____, 2014 WL 6653035 at *1 (11th Cir. Nov. 25, 2014) (citing 28 U.S.C. §§ 2244(b), 2255(h); <u>Gonzalez v. Sec'y, Dep't of Corr.</u>, 366 F.3d 1253, 1269 (11th Cir. 2004)).   This Court is constrained to rule consistently with <u>Tompkins</u> and <u>Stewart</u>, which instruct that a motion to vacate like Petitioner's is "second or successive."   The procedural background of <u>Tompkins</u>, in particular, reveals that it was decided on a factual record similar to the case at hand.

In <u>Tompkins</u>, a prisoner on Florida's death row filed a second § 2254 motion to vacate in which he raised new <u>Brady</u> and <u>Giglio</u> claims.[5]  557 F.3d at 1259.  Tompkins argued that the court should not dismiss his § 2254 motion as "second or successive" by likening his case to <u>Panetti v. Quarterman</u>.  In <u>Panetti</u>, the Supreme Court held that a petitioner's claim of incompetency-to-be-executed based on his mental condition at the time of the scheduled execution is not one that must be brought in

---

[5]      "Because of the similarities between the provisions governing second or successive petitions under § 2254 and second or successive motions under § 2255, precedent interpreting one of these parallel restrictions is instructive for interpreting its counterpart." <u>Stewart</u>, 646 F.3d at 859 n.6.

an initial habeas motion on pain of being treated as "second or successive."  127 S. Ct. at 2853.  The <u>Panetti</u> Court emphasized that its holding was limited to incompetency-to-be-executed claims because such claims are necessarily unripe until after the time has passed to file an initial habeas petition.  <u>Id.</u> at 2852.  Nevertheless, Tompkins argued that his new <u>Brady</u> and <u>Giglio</u> claims should similarly be regarded as not "second or successive."  The Eleventh Circuit rejected that argument, stating:

> Unlike a <u>Ford</u> [incompetency-to-be-executed] claim, the <u>Gardner</u>, <u>Brady</u>, and <u>Giglio</u> claims Tompkins wants to raise are claims that can be and routinely are raised in initial habeas petitions.  The violation of constitutional rights asserted in these kinds of claims occur, if at all, at trial or sentencing and are ripe for inclusion in a first petition.

<u>Tompkins</u>, 557 F.3d at 1260.  The court described Tompkins' case as "the usual case [where] a petition filed second in time and not otherwise permitted by the terms of [28 U.S.C.] § 2244 will not survive AEDPA's 'second or successive' bar."  <u>Id.</u> (quoting <u>Panetti</u>, 127 S. Ct. at 2855).  The court went further, explaining:

> Tompkins would have us hold that any claim based on new evidence is not "ripe" for presentation until the evidence is discovered, even if that discovery comes years after the initial habeas petition is filed. That is not what the Supreme Court in <u>Panetti</u> meant by "ripe."… The reason the <u>Ford</u> claim was not ripe at the time of the first petition in <u>Panetti</u> is not that evidence of an existing or past fact had not been uncovered at that time. Instead, the reason it was unripe was that no <u>Ford</u> claim is ever ripe at the time of the first petition because the facts to be measured or proven—the mental state of the petitioner at the time of execution—do not and cannot exist when the execution is years away.

<u>Tompkins</u>, 557 F.3d at 1260 (citations omitted).  Thus, the court held that a claim cannot avoid being characterized as "second or successive" simply because it is based on a factual predicate that was previously undiscovered.  Only a claim of incompetency-to-be-executed could avoid being characterized as "second or

successive," and then only because the facts relevant to that claim necessarily do not even exist until the time for execution draws close – not because the supporting facts existed but were previously unknowable.  <u>Id.</u>

Petitioner acknowledges the force of <u>Tompkins</u>, but argues that the court's holding should be limited to its facts.  Petitioner points out that the facts as recited in <u>Tompkins</u> do not make clear whether Tompkins' <u>Brady</u> and <u>Giglio</u> claims were based on a factual predicate that he knew of when he filed his first habeas petition, or whether, like Petitioner's case, the claims were based on facts only discovered after the first motion to vacate was resolved because the government had hitherto concealed them. (Doc. 3 at 17).  Petitioner contends that the holding of <u>Tompkins</u> was limited to the situation where a petitioner files a second motion to vacate based on <u>Brady</u> or <u>Giglio</u> claims that he already pled or could have included in his first petition. Therefore, Petitioner contends that <u>Tompkins</u> does not apply to this case.

Petitioner is correct that <u>Tompkins</u>' recitation of the facts does not make the context entirely clear.  However, the background of <u>Tompkins</u> reveals that the court rendered its decision based on a procedural history similar to Petitioner's.  Tompkins filed an initial habeas petition in federal district court in 1989 (<u>Wayne Tompkins vs. Harry K. Singletary</u>, 8:89-1638-CIV-T-99B), which the district court denied on the merits.  The Eleventh Circuit affirmed the district court's decision on appeal. <u>Tompkins v. Moore</u>, 193 F.3d 1327 (11th Cir. 1999).  Then, in 2001, the State of Florida disclosed police reports that arguably contradicted the theory of guilt which the State had advanced at trial.  <u>Initial Brief for Tompkins</u>, <u>Tompkins v. Florida</u>, 994

So. 2d 1072 (Fla. 2008) (Nos. SC08-992, SC08-1979, SC08-2000), 2008 WL 5007468 at *9.  Also in 2001, the State turned over previously undisclosed documents about a possible witness who had been the murder victim's boyfriend, and who subsequently provided an affidavit giving a statement favorable to Tompkins.  Id. at 10.  After unsuccessfully moving for post-conviction relief in state court, Tompkins filed a second § 2254 motion to vacate in federal court in 2008, raising Brady and Giglio claims based on the 2001 disclosures.  (Case No. 8:08-cv-2212-T-23MAP, Doc. 1 at 11).  The district court dismissed the petition as being an unauthorized second or successive motion to vacate.  Tompkins v. Sec'y, Dep't of Corrections, 2008 WL 4844716 (M.D. Fla., Nov. 10, 2008).  That decision led to the Eleventh Circuit's opinion in Tompkins, 557 F.3d 1257.  Thus, the Brady and Giglio violations alleged in Tompkins were based on disclosures made by the State only after the petitioner's first § 2254 motion was decided.  Moreover, the disclosures were of evidence in the government's possession.  That is the same as the situation here, where Petitioner raises Brady and Giglio claims based on disclosures the United States made only after his initial motion to vacate had been decided.  Therefore, the fact that Petitioner's new claims are based on information disclosed only after his first motion to vacate was resolved does not distinguish this case from Tompkins.

Petitioner asserts that the Eleventh Circuit retreated from Tompkins in Stewart v. United States.  (Doc. 3 at 19).  However, Stewart evinces no intent to recede from Tompkins.  Stewart involved a defendant who, after filing an initial § 2255 petition, obtained vacatur of a state conviction that was a necessary predicate

for his sentence as a career offender under the Armed Career Criminal Act.  646 F.3d
at 858.   After getting the state conviction vacated, Stewart moved to correct his
federal sentence through a second habeas petition, arguing that his career offender
sentence was rendered invalid without the predicate conviction.  <u>Id.</u>  Thus, the defect
under attack in Stewart's second habeas petition (continued imposition of the career
offender sentence without the necessary predicate convictions) did not even exist
until the predicate conviction was vacated, which in turn only occurred after
Stewart's first federal habeas petition was resolved.  The court of appeals therefore
found that Stewart's motion to vacate was not "second or successive," and that he was
not required to obtain permission from the court of appeals before filing it.   <u>Id.</u> at
865.  In reaching that conclusion the court discussed with approval the Fifth Circuit's
decision in <u>Leal Garcia v. Quarterman</u>, 573 F.3d 214 (5th Cir. 2009), where the Fifth
Circuit held that a prisoner's second habeas petition, based upon a 2005 declaration
by President George W. Bush to enforce an order of the International Court of Justice,
was not "second or successive."   According to <u>Leal Garcia</u>, the petitioner's second
motion to vacate was not "second or successive" because the defect complained of did
not even come into existence until the state of Texas decided it would not respect the
President's 2005 directive to comply with the International Court of Justice's order.
<u>Leal Garcia</u>, 573 F.3d at 223-24.  <u>Stewart</u> and <u>Leal Garcia</u>, however, emphasized the
distinction between claims based on a factual predicate that was "merely
undiscoverable" and claims based on a defect that was altogether nonexistent.

Stewart, 646 F.3d at 863; Leal Garcia, 573 F.3d at 222.  As the Eleventh Circuit recounted:

> On appeal, the Fifth Circuit set out to determine if Leal Garcia's petition was successive under AEDPA, and, therefore, subject to the statute's gatekeeping provisions.  Id. at 219.  Leal Garcia… argue[d] that his petition was "non-successive because it [was] based on a claim unavailable to him at the time of his first habeas petition." Leal Garcia, 573 F.3d at 220 (emphasis added). The court rejected the full breadth of Leal Garcia's interpretation because it did not comport with AEDPA's treatment of the term "successive." Id. at 221. To adopt Leal Garcia's approach—classifying as "non-successive" any petition based on a claim that was "unavailable" at the time of a first petition—would nullify AEDPA's gatekeeping provisions. Id. (explaining that "claims based on new rules of constitutional law (made retroactive by the Supreme Court)," and "claims based on a factual predicate not previously discoverable" are both subject to the gatekeeping provision; therefore, both are previously unavailable and "successive" under AEDPA).

Stewart, 646 F.3d at 861.  In explaining why Stewart could bring his second motion to vacate without it being considered "second or successive," the Eleventh Circuit said:

> "[C]laims based on a factual predicate not previously discoverable are successive," but "[i]f ... the purported defect did not arise, or the claim did not ripen, until after the conclusion of the previous petition, the later petition based on that defect may be non-successive." Leal Garcia, 573 F.3d at 221, 222. We are not faced with a claim based on facts that were merely undiscoverable.  Rather, Stewart has presented a claim, the basis for which did not exist before the vacatur of his predicate state convictions—after his first § 2255 motion had already been filed and dismissed.

Stewart, 646 F.3d at 863 (emphasis in original).

Far from retreating from Tompkins, the Stewart decision reiterates that a second habeas petition will not avoid being characterized as "second or successive" simply because the factual predicate of a claim was previously undiscoverable.

Rather, it is only defects that were wholly nonexistent at the time the petitioner filed his initial motion to vacate that will avoid being characterized as "second or successive" in a subsequent motion to vacate.  The Eleventh Circuit specifically rejected the theory that any claim unavailable when the petitioner filed his first motion to vacate is not "second or successive."  Stewart, 646 F.3d at 860 ("But adopting that approach too broadly would threaten Congress' clear intention to limit 'second or successive' attempts at post-conviction relief.").  Because AEDPA specifically provided a mechanism for bringing claims based on newly discovered evidence in a subsequent motion to vacate, see 28 U.S.C. §§ 2244(b), 2255(h), to hold that such claims may nevertheless proceed without comporting with the requirements of § 2244(b) would be to subvert the statutory scheme erected by Congress to regulate habeas litigation.  See Stewart, 646 F.3d at 860.

The Court acknowledges that its decision is in tension with those of other circuit courts of appeals to have confronted the same issue.  The Ninth and Tenth Circuits have each addressed whether a claim should be treated as "second or successive" when based on new evidence that the government withheld until after the petitioner has filed his first motion to vacate.  United States v. Lopez, 577 F.3d 1053 (9th Cir. 2009); Douglas v. Workman, 560 F.3d 1156 (10th Cir. 2009).  Each of those circuits found that such claims should not be treated as "second or successive."  Lopez, 577 F.3d at 1064-65 ("A broad rule… under which all second-in-time Brady claims would be subject to § 2255(h)(1), would completely foreclose federal review of some meritorious claims and reward prosecutors for failing to meet their constitutional

disclosure obligations… This would seem a perverse result and a departure from the Supreme Court's abuse-of-the-writ jurisprudence."); <u>Douglas</u>, 560 F.3d at 1192-93 ("[T]o treat Mr. Douglas's <u>Brady</u> claim as a second or successive request for habeas relief, subject to the almost insurmountable obstacles erected by 28 U.S.C. § 2244(b)(2)(B), would be to allow the government to profit from its own egregious conduct… Certainly, that could not have been Congress's intent when it enacted AEDPA.")[6]. However, this Court must follow Eleventh Circuit precedent, not out-of-circuit decisions. Because the government's alleged <u>Brady</u> and <u>Giglio</u> violations existed at the time Petitioner filed his first motion to vacate, even though the factual predicate was undiscoverable by Petitioner, Petitioner's claim does not fall within <u>Stewart</u>'s narrow exception for subsequent claims that do not qualify as "second or successive."

The Court also recognizes the apparent inequity in holding that the government, either through simple negligence or purposeful misconduct[7], could withhold exculpatory evidence until after a petitioner has filed a first habeas petition,

---

[6]    <u>Douglas</u> is distinguishable from the current case, however. Importantly, the petitioner's initial motion to vacate in <u>Douglas</u> was still open when he discovered the new <u>Brady</u> material, and therefore his first motion to vacate was still unresolved. <u>Id.</u> at 1190. Thus, the Tenth Circuit held that "to allow Mr. Douglas to supplement his first habeas petition in this manner would not be contrary to one of the recognized purposes of AEDPA-finality." <u>Id.</u>  Here, Petitioner's first habeas petition was resolved in 2008, so finality is a greater concern. Moreover, in <u>In re Pickard</u>, 681 F.3d 1201 (10th Cir. 2012), the same circuit court held that a § 2254 petition raising new <u>Brady</u> and <u>Giglio</u> claims based on information obtained from the government through FOIA requests only after petitioner's first habeas petition was resolved were "certainly second or successive claims…" <u>Id.</u> at 1205.

[7]    The Court does not believe that the United States suppressed exculpatory evidence on purpose. The seasoned prosecutor, well-known to the Court, which has no doubt of his integrity, promptly disclosed the information to Petitioner once he discovered it.  The Court is nevertheless troubled that the government's negligence could result in depriving Petitioner of the ability to be heard on this claim earlier and now, through no fault of his own, the Petitioner must meet the higher burden of § 2255(h)(1).

and then require the Petitioner to meet the heightened burden of demonstrating to the court of appeals by clear and convincing evidence that the newly discovered evidence would produce an acquittal.  <u>See</u> 28 U.S.C. § 2255(h)(1).  However, the Court is bound by <u>Tompkins</u> and <u>Stewart</u>, neither of which suggests that <u>Brady</u> or <u>Giglio</u> violations discovered subsequent to an initial habeas petition may be treated as anything other "second or successive."  Petitioner is not completely without a remedy, though.  While the burden is high, Petitioner may still seek permission to file a second or successive motion to vacate from the Eleventh Circuit Court of Appeals based on the newly disclosed evidence.

Accordingly, <u>Tompkins</u> and <u>Stewart</u> dictate that Petitioner's motion to vacate be deemed "second or successive."  A district court may only consider a second or successive motion to vacate if the petitioner has obtained permission from the circuit court of appeals to file one.  28 U.S.C. § 2255(h).  "The bar on second or successive motions is jurisdictional…" <u>In re Morgan</u>, 717 F.3d 1186, 1193 (11th Cir. 2013) (citing <u>Panetti</u>, 127 S. Ct. at 2852).  Petitioner has not yet obtained authorization from the Eleventh Circuit to file this second motion to vacate.  Accordingly, the motion is due to be dismissed for lack of jurisdiction, but without prejudice to Petitioner's right to request permission from the Eleventh Circuit to refile it in this Court.

## B. Petitioner is entitled to the limited relief afforded by Rule 60(b)(3) to reopen the judgment on Petitioner's first habeas petition

The Court considers, in the alternative, whether it should reopen the judgment on Petitioner's initial § 2255 motion pursuant to Fed. R. Civ. P. 60(b).  Petitioner

argues that the government committed "fraud, misrepresentation, or misconduct" under Rule 60(b)(3) when it asserted in the initial § 2255 case that there was no other impeachment evidence against Freddy Pena that Petitioner's counsel could have uncovered, though in fact there was.  Petitioner argues that this misrepresentation created a defect in the integrity of the initial collateral proceeding, and thus the Court should revisit that judgment.  The United States insists that it did not intentionally mislead the Court concerning additional impeachment evidence, and therefore that the Court should deny relief under Rule 60(b)(3).

### 1. Jurisdiction

The limit against second or successive motions to vacate is jurisdictional.  <u>In re Morgan</u>, 717 F.3d at 1193.  Therefore, before the Court can rule on Petitioner's alternative Rule 60(b) motion, the Court must be satisfied that it is not actually a successive motion to vacate disguised as one under Rule 60(b) designed to circumvent the requirements of 28 U.S.C. § 2255(h).  The Supreme Court has provided instruction on how to construe prisoners' claims under Rule 60.  <u>Gonzalez v. Crosby</u>, 125 S. Ct. 2641, 2647-48 (2005).  If the Rule 60 motion seeks to add a new ground for relief from the underlying conviction, or attacks the district court's resolution of an initial § 2255 motion on the merits, then a court should consider the Rule 60 motion a "second or successive" motion to vacate.  <u>Id.</u>  But "when a Rule 60(b) motion attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings," a court should not consider the Rule 60 motion to be a "second or successive" motion to vacate.  <u>Id.</u> at 2648.

Under Petitioner's alternative Rule 60 argument, he does not attempt to add a new claim for relief, nor does he challenge the Court's reasoning for its decision on the initial motion to vacate.  Instead, Petitioner asserts that the government's argument in the initial § 2255 proceeding that there was no further <u>Brady</u> material Petitioner's trial counsel could have uncovered, when in fact there was, corrupted the Court's judgment on the ineffective assistance of counsel claim.  In other words, Petitioner's Rule 60 motion does not attempt to vacate the underlying conviction by adding a new <u>Brady</u> or <u>Giglio</u> claim, but instead seeks to vacate the court's previous order denying post-conviction relief based on the government withholding evidence relevant to the prejudice prong of Petitioner's <u>Strickland</u> claim.  Because Petitioner has so narrowly tailored his argument, the Court is satisfied it is a proper Rule 60(b) claim rather than a disguised successive motion to vacate.  Therefore, the Court has jurisdiction to rule on the motion.

### 2.  The timeliness of Petitioner's Rule 60(b)(3) motion

The parties have disputed whether the Court should consider Petitioner's alternative Rule 60(b) motion timely, as it was filed three years after judgment in the initial § 2255 case.  Petitioner characterized his Rule 60(b) motion as one alleging fraud, misrepresentation, or misconduct under Rule 60(b)(3).  A motion under Rule 60(b)(3) must be brought within one year of the judgment under attack.  Fed. R. Civ. P. 60(c)(1).  However, this time limitation is not jurisdictional, Fed. R. Civ. P. 82, and the government did not raise the time limitation defense in its responsive pleading.  <u>See</u> Doc. 16 at 16 n.11.  The government did not raise the defense at all until nearly

three years after Petitioner filed the motion, when the Court brought it to the parties' attention <u>sua</u> <u>sponte</u>.  Petitioner therefore argues that the government either waived or forfeited the time limitation defense by failing to raise it for several years, that it would be unfair in view of all the circumstances for the Court to aid the government by enforcing the time limitation <u>sua</u> <u>sponte</u>, and that if the Court does find that the government did not forfeit or waive the time limitation defense, then the Court should equitably toll the one-year limitations period for filing a Rule 60(b)(3) motion.[8]

The Court does not reach Petitioner's equitable tolling argument because it agrees that the government has forfeited the time limitations defense.  A party should raise any defenses it has in its responsive pleading, Fed. R. Civ. P. 8(b)(1)(A), including a statute of limitations defense.  Fed. R. Civ. P. 8(c)(1).  A party that fails to timely raise a non-jurisdictional statute of limitations defense loses the right to enforce it.  Although a court <u>may</u> raise an overlooked statute of limitations <u>sua</u> <u>sponte</u>, a court is not required to enforce it unless the limitation is jurisdictional.  <u>See</u> <u>Day v. McDonough</u>, 547 U.S. 198, 209 (2006) ("In sum, we hold that district courts are permitted, but not obliged, to consider, <u>sua</u> <u>sponte</u>, the timeliness of a state prisoner's

---

[8]      Petitioner could also have moved for relief from judgment under Fed. R. Civ. P. 60(d)(3) due to "fraud on the court," because such motions have no time limit.  However, establishing "fraud on the court" under Rule 60(d)(3) is significantly more difficult than establishing fraud, misconduct, or misrepresentation under Rule 60(b)(3).  Whereas fraud, misconduct, or misrepresentation under Rule 60(b)(3) may encompass conduct that is not purposeful, <u>see</u> <u>United States v. One (1) Douglas A-26B Aircraft</u>, 662 F.2d 1372, 1375 n.6 (11th Cir. 1981), "fraud on the court" under Rule 60(d)(3) "embrace[s] only that species of fraud which does or attempts to defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." <u>Zakrewski v. McDonough</u>, 490 F.3d 1264, 1267 (11th Cir. 2007) (quoting <u>Travelers Indem. Co. v. Gore</u>, 761 F.2d 1549, 1551 (11th Cir. 1985)).  The broader grounds for obtaining relief from judgment under Rule 60(b)(3) is the likely reason why Petitioner has argued against the Court finding the Rule 60(b)(3) motion time-barred.

habeas petition."). In <u>Day</u>, a habeas petitioner filed his § 2254 motion outside of the one-year time limit imposed by AEDPA. The state of Florida miscalculated the amount of untolled time that had passed and conceded that the motion was timely, but the district court identified the error, raised the issue <u>sua</u> <u>sponte</u>, and dismissed the motion. The Supreme Court upheld the district court's decision to dismiss, holding that a court may raise AEDPA's statute of limitations <u>sua</u> <u>sponte</u> where the government neither raised the defense nor intelligently waived it. <u>Id.</u> at 209, 210 n.11. However, the Supreme Court also stated:

> [B]efore acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions. <u>Further</u>, the court must assure itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issue, and determine whether the interests of justice would be better served by addressing the merits or by dismissing the petition as time barred.

<u>Id.</u> at 210 (citations omitted) (emphasis added). Of course, <u>Day</u> involved AEDPA's statute of limitations rather than that contained in Fed. R. Civ. P. 60(c)(1), but the principle that a court should not enforce a statute of limitations <u>sua</u> <u>sponte</u> unless it is assured that the interests of justice will not be disserved is equally instructive here. While the Court has given both parties fair notice and an opportunity to present their positions on the timeliness of Petitioner's Rule 60(b)(3) motion, the Court is not convinced that the interests of justice will be served by dismissing Petitioner's Rule 60(b)(3) motion <u>sua</u> <u>sponte</u>. The government not only failed to argue the issue until three years after Petitioner filed the current motion, but it also made it impossible for Petitioner to timely file a Rule 60(b)(3) motion because it failed to disclose potentially impeaching evidence about Freddy Pena until three years after

Petitioner's initial § 2255 motion was resolved.   Therefore, the Court declines to dismiss Petitioner's Rule 60(b)(3) motion as untimely.   The government forfeited Rule 60(c)(1)'s one-year statute of limitations defense by not raising the matter in its responsive pleading or any other for three years.   Only unfairness would result to Petitioner were the Court, under these circumstances, to dismiss the motion on its own initiative.

### 3.  The merits of Petitioner's Rule 60(b)(3) motion

"On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for… (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party…" Fed. R. Civ. P. 60(b)(3).  To succeed on a Rule 60(b)(3) motion, a party must prove by clear and convincing evidence[9] that the adverse party obtained the verdict through fraud, misrepresentation, or other misconduct.  Cox Nuclear Pharmacy, Inc. v. CTI, Inc., 478 F.3d 1303, 1314 (11th Cir. 2007) (citing Frederick v. Kirby Tankships, Inc., 205 F.3d 1277, 1287 (11th Cir. 2000)).   Additionally, the movant must show "that the conduct prevented the losing party from fully and fairly presenting his case or defense." Frederick, 205 F.3d at 1287.  However, Rule 60(b)(3) "does not require that the information withheld be of such nature as to alter the result in the case." Rozier v. Ford Motor Co., 573 F.2d 1332, 1339 (5th Cir. 1978) (citing Seaboldt v. Pennsylvania RR. Co., 290 F.2d 296, 299-300 (3d Cir. 1961)).

---

[9]    "Clear and convincing evidence" is difficult to define, but it has been described as evidence that "place[s] in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable." Colorado v. New Mexico, 467 U.S. 310, 316 (1984).

Misrepresentation and misconduct are separate grounds for relief under Rule 60(b)(3) apart from fraud, and neither necessitates showing purposeful misconduct or malice. <u>United States v. One (1) Douglas A-26B Aircraft</u>, 662 F.3d 1372, 1375 n.6 (11th Cir. 1981). The Eleventh Circuit explained:

> Were the term "misrepresentation" as used in Rule 60(b)(3) interpreted to encompass only false statements made with the intention to deceive, the behavior described by that word would be wholly subsumed within the category of behavior that the same subsection of the rule refers to as "fraud." Such a narrow reading of the word would render it superfluous for purposes of Rule 60(b)(3) and would thus conflict with the established principle of statutory construction that all words within a statute are intended to have meaning and should not be construed as surplusage. <u>United States v. Wong Kim Bo</u>, 472 F.2d 720, 722 (5th Cir. 1972). While few cases have addressed the question, at least one decision in the Fifth Circuit has afforded relief for misrepresentation under Rule 60(b)(3) despite the absence of "a deliberate evil purpose to misstate or conceal or thereafter engage in foot-dragging lest the truth might be uncovered." <u>Bros. Inc. v. Grace Mfg. Co.</u>, 351 F.2d 208, 211 (5th Cir. 1965).

<u>Id.</u> The First, Fourth, Fifth, Seventh, and Ninth Circuit Courts of Appeals agree that Rule 60(b)(3) applies to unintentional misconduct or misrepresentations as well as intentional ones. <u>Anderson v. Cryovac, Inc.</u>, 862 F.2d 910, 923 (1st Cir. 1988) ("Misconduct" under Rule 60(b)(3) does not require proof of nefarious intent or purpose); <u>Schultz v. Butcher</u>, 24 F.3d 626, 630 (4th Cir. 1994) (inadvertent as well intentional failure to comply with a discovery order constitutes misconduct under Rule 60(b)(3)); <u>W.E. Grace Mfg. Co.</u>, 351 F.2d at 211 (Fifth Circuit decision that a party can obtain relief due to misrepresentation even in the absence of "a deliberate evil purpose to misstate or conceal or thereafter engage in foot-dragging lest the truth might be uncovered."); <u>Lonsdorf v. Seefeldt</u>, 47 F.3d 893, 897 (7th Cir. 1995) ("Rule

60(b)(3) applies to both intentional and unintentional misrepresentations."); <u>In re M/V Peacock on Complaint of Edwards</u>, 809 F.2d 1403, 1405 (9th Cir. 1987) (negligent misrepresentations may support relief from judgment under Rule 60(b)(3)). Therefore, the absence of intent to deceive does not foreclose relief under Rule 60(b)(3).

The government has maintained that it did not purposefully conceal impeachment evidence about Freddy Pena as part of a scheme to convince the Court or defendant's counsel that further investigation by trial counsel into Pena's record would have been fruitless. The Court agrees. There is no evidence that the government acted intentionally to withhold the evidence, and the Court reiterates its confidence that the nondisclosure was unintentional, even if negligent. But in arguing that the Court should deny Petitioner's Rule 60(b) motion because he has failed to demonstrate an unconscionable scheme or plan, the government conflates the standard governing an independent action for fraud on the court under Rule 60(d)(3) with the more flexible standard allowing for relief under Rule 60(b)(3). <u>See</u> <u>Rozier</u>, 573 F.2d at 1338 (explaining that the standard governing an independent action for "fraud on the court" is distinguishable from the standard governing claims of fraud, misrepresentation, or other misconduct under Fed. R. Civ. P. 60(b)(3)). Unintentional neglect in failing to comply with discovery requirements, or negligent misrepresentations to the court, can satisfy the requirements of Rule 60(b)(3), and thus the Court may not deny relief under Rule 60(b)(3) only because Petitioner has not shown intentional misconduct.

Applying the law to this case, the Court concludes that Petitioner has shown by clear and convincing evidence that, during the initial § 2255 proceeding, the government inaccurately represented that trial counsel had uncovered all of the impeachment evidence there was against Pena. The government failed to disclose significant impeachment evidence about Pena for years, and indeed, it has forthrightly admitted so. In 2011, the government turned over previously undisclosed DEA records showing that Pena, both before and after his activation as a confidential informant, had proven himself to be materially dishonest with his federal handlers, and that in 2002 the DEA's Tampa office moved him to "restrictive use" on its own initiative because it considered him untrustworthy. Yet Pena falsely testified at Petitioner's trial that he had never given false or misleading information to law enforcement officers. (Crim. Doc. 96 at 232). Then, during Petitioner's first collateral proceeding, the government represented that there was no impeachment evidence against Pena other than what trial counsel elicited on cross-examination. (See Case No. 3:06-cv-906-J-32HTS, Doc. 8 at 8). The government could and should have known that such a representation was untrue. Indeed, a prosecutor in the very same United States Attorney's Office discovered the impeachment information on Pena and disclosed it in a case that was tried merely weeks before Petitioner's trial. Another Assistant United States Attorney, from Massachusetts, discovered the same information in the DEA's Tampa files while conducting due diligence for a trial in which Pena was a witness. Thus, the government has no explanation for being unaware of the information. The government was negligent (albeit not intentional)

in representing during the civil § 2255 case that Petitioner's trial counsel had discovered all the impeachment evidence against Pena that existed.

The only remaining question is whether the misrepresentation prevented Petitioner from fully and fairly presenting his case for post-conviction relief.  See Frederick, 205 F.3d at 1287.  The Court finds that it did, and points to its order denying Petitioner's initial § 2255 motion.  Regarding the claim in Petitioner's first § 2255 motion that counsel rendered ineffective assistance by inadequately investigating Pena, the Court bypassed a determination of whether counsel performed deficiently and disposed of the claim on Strickland's prejudice prong.  (See Case No. 3:06-cv-906-J-32HTS, Doc. 12 at 5-7).  The Court found, just as the government had urged, that Petitioner could not show prejudice under Strickland because he had not shown that further investigation into Pena would have yielded anything.  See id.  Thus, the government's representation that defense counsel had dug up all the impeachment evidence against Pena that existed formed a core part of the Court's rationale for its decision.  As a result, the Court denied Petitioner's § 2255 motion without an evidentiary hearing.  Had the government accurately represented or disclosed that there was significant additional impeachment evidence, it is likely the Court would not have denied Petitioner's first motion to vacate without so much as an evidentiary hearing.  The Court is therefore satisfied that Petitioner has met his burden of showing that the government's inaccurate representation prevented him from fully and fairly presenting his case for post-conviction relief.

## C. The remedy

The scope of Petitioner's relief under Rule 60(b)(3) is narrow in light of that rule's interaction with AEDPA's restrictions on second or successive motions to vacate. Petitioner has successfully shown that the order denying his initial § 2255 motion (Case No. 3:06-cv-906-J-32HTS, Doc. 12) was obtained as the result of a negligent misrepresentation. That order is therefore due to be vacated and the case reopened. However, Petitioner is not allowed to add new claims to the now-reopened § 2255 motion, elsewise he will have used Rule 60(b) to circumvent AEDPA's limitation on second or successive motions to vacate. See Gonzalez v. Crosby, 125 S. Ct. at 2647-48 (a Rule 60(b) motion that seeks to add new claims should be construed as a second or successive motion to vacate). Petitioner's Rule 60(b) relief is limited to revisiting only the claims included in the original § 2255 motion. The Court will therefore request Petitioner to file a supplemental brief explaining how the newly disclosed evidence concerning Freddy Pena affects the analysis of any of the claims raised in Petitioner's original § 2255 motion to vacate (Case No. 3:06-cv-906-J-32HTS, Docs. 1 and 2), and advising the Court how it should now proceed.

Because the foregoing discussion of Tompkins, 557 F.3d 1257, and Stewart, 646 F.3d 856, also resolves the present motion to vacate, the Court will enter a separate final order for the purposes of Fed. R. Civ. P. 54 and 28 U.S.C. § 1291 in Case Number 3:11-cv-1144-J-32PDB. The final order will dismiss Petitioner's second motion to vacate as an unauthorized second or successive motion and grant Petitioner a certificate of appealability. As that order will mark the Court's final decision on

Petitioner's second motion to vacate and terminate any consideration of the merits of the claims raised therein, Petitioner may appeal from that order while Petitioner's first § 2255 case is reopened.

Accordingly, it is hereby

**ORDERED:**

1. Petitioner's alternative Rule 60(b)(3) motion for relief from judgment on his first § 2255 motion to vacate (Case No. 3:06-cv-906-J-32HTS) is **GRANTED**.

2. As to Petitioner's first motion to vacate (Case No. 3:06-cv-906-J-32HTS), the Court's order denying relief (Doc. 12) is hereby **VACATED** pending further briefing by the parties.  The Clerk is directed to reopen the file in Case No. 3:06-cv-906-J-32HTS.

3. Petitioner is directed to file a supplemental brief in Case No. 3:06-cv-906-J-32HTS, discussing how the newly disclosed evidence affects the first § 2255 motion.  Petitioner shall have until **February 26, 2015** to file his supplemental brief.*

4. The government's response is due **March 26, 2015**.  The Court will then determine whether to set a hearing, evidentiary or otherwise.

5. A separate order will follow with respect to Petitioner's second § 2255

---

\* The Court continues its appointment of the Office of the Federal Public Defender for the reopened § 2255 proceeding.

motion to vacate (Case No. 3:11-cv-1144-J-32PDB).

**DONE AND ORDERED** at Jacksonville, Florida this 26th day of January, 2015.

TIMOTHY J. CORRIGAN
United States District Judge

lc 19

Copies:
Counsel of record
Pro se party