UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GINO VELEZ SCOTT,

        Petitioner,

vs.           Case No.:   3:06-cv-906-J-32PDB
                                           3:03-cr-343-J-32PDB

UNITED STATES OF AMERICA,

        Respondent.
_____/

**ORDER**

This post-conviction case and its companion case, No. 3:11-cv-1144 (now on appeal under Eleventh Circuit Case No. 15-11377), have traveled an unusual road. (See Doc. 22).[1] After the Court granted Rule 60(b) relief (Doc. 22), this case is now back before the Court on Petitioner Gino Velez Scott's initial Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (Doc. 1), as well as Petitioner's Supplemental Brief Regarding Newly Disclosed Evidence (Doc. 27). The United States has responded (Doc. 30), and Petitioner has replied (Doc. 33).

**I.   Background**

Following a reverse sting operation involving a confidential informant who posed as a drug distributor, a grand jury indicted Petitioner on November 19, 2003

---

[1] Citations to the record in the underlying criminal case, United States of America vs. Gino Velez Scott, Case No. 3:03-cr-343-J-32PDB, will be denoted as "Crim. Doc. __." Unless otherwise noted, citations to the record in the instant civil § 2255 case, No. 3:06-cv-906, will be denoted as "Doc. __."

1

with one count of conspiracy to possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. (Crim. Doc. 1). The grand jury also indicted a co-defendant, Jose Augustine Tamayo. Tamayo pled guilty to the conspiracy charge on May 6, 2004 pursuant to a plea agreement. (Crim. Doc. 56). Petitioner rejected a plea offer and took his case to trial.

Of relevance here, five days before the trial was set to begin, the government disclosed the identity of the confidential informant, Freddy Pena. (See Crim. Doc. 95 at 45-53). The government disclosed both that it planned to use Pena as a witness, as well as the following Brady information: (1) that Pena had a 1996 conviction for trafficking heroin, (2) that Pena was a paid informant for the Drug Enforcement Administration (DEA) who had assisted the United States in sixteen other drug cases, and (3) that the DEA had paid Pena about $168,000 over three years for his services, that the DEA was paying him for information in the instant case, and that Pena stood to gain a fraction of the drug money seized from the reverse sting operation. (See id. at 46-48). Defense counsel complained that the government's disclosures were incomplete under Brady and Giglio, and that merely revealing that Pena had a prior conviction or testified in previous cases, without providing the case numbers, did not allow him to track down the records and examine them with five days left before trial. (Id. at 45-52). Counsel stated:

> How in God's earth am I ever going to find the cases he supposedly was involved in? And if he did lie, I'm entitled to know those things. I'm entitled to investigate those things.
>
> I certainly can't do it on five days' notice. I probably can't do it on 20 days' notice. But I would like to at least – and I think Mr. Scott, in facing

2

> in this court life imprisonment, is entitled to know if Mr. Pena, through every one of these single cases, has been a truthful individual. If not, I'm certainly allowed to cross-examine him on those factors.

(Id. at 48-49). After discussion, the Court concluded that the government had complied with its discovery obligations. (Id. at 50-52). The Court assured defense counsel that "if [the prosecutor] had evidence that Mr. Pena had not told the truth in some case, then he would obviously have turned it over, and would have been required to." (Id. at 52). Defense counsel agreed with that assurance. (See id.).

Petitioner's trial commenced on June 28, 2004. (See Crim. Doc. 89). During trial, the government presented testimony from Pena (Crim. Doc. 95 at 226-309), co-defendant Jose Tamayo (id. at 110-200), two employees of First State Bank and Trust in Valdosta, Georgia, where Petitioner had an account (id. at 201-27, 237-47), and two DEA agents (id. at 15-94, 248-61). Pena testified that he posed as a drug dealer, and that he, Petitioner, and Tamayo eventually formulated an agreement to exchange ten kilograms of cocaine at a price of $18,000 per kilogram. Tamayo generally corroborated Pena's testimony, and he directly testified to the existence of an agreement between him and Petitioner to purchase cocaine from Pena. Trial counsel extensively cross-examined Pena and impeached him with evidence that he had a financial incentive to see Petitioner convicted. (See Crim. Doc. 95 at 274-308). The government introduced a recorded phone conversation between Petitioner and Tamayo where they appeared to discuss whether a drug sale had been completed, and whether the police were on to them. (See Doc. 30-7, Trial Exhibit 15a). The government also produced evidence that Petitioner was the source of $54,000 in drug

3

purchase money found on Tamayo on the day he was arrested. On June 30, 2004, the jury returned a guilty verdict. (Crim. Doc. 97 at 103-04). The Court sentenced Petitioner to a term of life in prison. (Crim. Doc. 109). Petitioner appealed his conviction, which the Eleventh Circuit Court of Appeals affirmed. United States v. Scott, 136 F. App'x 273 (11th Cir. 2005). The Supreme Court denied his petition for a writ of certiorari. Scott v. United States, 546 U.S. 970, 126 S. Ct. 502, 163 L.Ed.2d 380 (2005).

On October 12, 2006, Petitioner brought this case, moving to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. Among other things, Petitioner alleged that counsel gave ineffective assistance by failing to discover undisclosed impeachment evidence concerning the confidential informant, Freddy Pena. The government responded that any impeachment evidence that existed regarding Pena had already been disclosed, and therefore Petitioner could not meet the prejudice prong of Strickland v. Washington, 466 U.S. 668 (1984). (Doc. 8 at 8-9). The government stated that it had already disclosed that Pena had a prior conviction for trafficking heroin, that the DEA paid Pena about $168,000 over a three-year period to serve as an informant, and that Pena expected further payment in connection with Petitioner's case. (Doc. 8 at 9 n.6) (citing Crim. Doc. 95 at 227-32). The government contended:

> What would further investigation have disclosed?... [T]he defendant must provide some evidence that had defense counsel conducted a more thorough investigation of the witness, something of use to the defense would have been uncovered. The defense has had more than two years to suggest something that further investigation would have turned up

>   that might have made a difference in the trial.  The petition has nothing
>   on this topic.

(Doc. 8 at 8-9).  Persuaded by this argument, the Court did not address whether counsel's performance was deficient, but instead disposed of the claim on <u>Strickland</u>'s prejudice prong, concluding that Petitioner had "fail[ed] to show what additional information could have been uncovered to further impeach [Pena] at trial."  (Doc. 12 at 6).  The Court thus denied the motion to vacate on April 16, 2008.  (<u>See</u> Doc. 12; Doc. 13).

Around April of 2011, the prosecutor learned that there was, in fact, additional impeachment evidence against Pena.  The government promptly disclosed the information, and it requested that the Court appoint counsel for Petitioner to determine the appropriate course of action.  The United States disclosed that: (1) Pena lied to investigators about the intended recipient of heroin that was involved in his 1996 arrest for heroin trafficking, (2) in October 2001, Pena and another DEA confidential informant stole 1.5 kilograms of cocaine from a drug dealer who was the subject of a DEA investigation, (3) Pena failed to disclose his participation in the aforementioned theft when the DEA's Tampa office activated him as an informant in November 2001, (4) sometime in 2002, the DEA learned about the theft of cocaine and confronted Pena about it, and Pena admitted to the theft, and (5) in June 2002, the DEA's Tampa office moved Pena to "restricted use" on its own initiative, with one Assistant United States Attorney commenting that he would be hesitant to use Pena again.  The United States had not disclosed the aforementioned information during

pre-trial discovery, nor had Pena testified to this information at trial. Petitioner was unaware of the information during his trial and the first § 2255 proceeding.

Based on these disclosures, Petitioner filed a second motion to vacate under 28 U.S.C. § 2255, in Case No. 3:11-cv-1144-J-32PDB, arguing that the new information demonstrated violations of the government's discovery obligations under Brady and Giglio. Alternatively, Petitioner argued that the government's contention in this first § 2255 proceeding, i.e., that trial counsel's performance could not have prejudiced Petitioner because there was no other impeachment evidence he could have uncovered, was a misrepresentation that supported reopening the first § 2255 case under Federal Rule of Civil Procedure 60(b)(3). After briefing, the Court dismissed the § 2255 motion in Case No. 3:11-cv-1144 as an unauthorized second or successive motion to vacate, but granted relief in this case under Rule 60(b)(3). (See Doc. 22).[2] The Court vacated the judgment denying relief on the first § 2255 motion and requested supplemental briefing to address whether the new information affected the analysis of any of the grounds raised in that initial motion. In doing so, the Court limited Petitioner to consideration of the grounds raised in the first § 2255 motion, in order to respect that Rule 60(b) may not be used to raise new grounds for collateral relief. (Doc. 22 at 25-26); see also Gonzalez v. Crosby, 125 S. Ct. 2641, 2647-48 (2005).

---

[2] Petitioner has appealed the Court's order dismissing the petition in Case No. 3:11-cv-1144 as an unauthorized second or successive motion to vacate, but the Eleventh Circuit has stayed the appeal until this Court rules on the reopened motion to vacate in this case. (See Order Granting Motion to Stay, Scott v. United States, No. 15-11377 (11th Cir. Jun. 26, 2015)).

In the supplemental brief, Petitioner revisits the allegation that counsel rendered ineffective assistance by inadequately investigating impeachment evidence concerning Pena. Petitioner contends that counsel should have: (1) moved for disclosure of the confidential informant's identity earlier than the government's court-imposed deadline for disclosing Brady material; (2) requested Pena's DEA "suitability reports" once Pena's identity was known; (3) specifically requested the Court for instances of Pena's prior testimony in federal court; (4) requested from the Court or from the prosecution the particulars of Pena's testimony in a trial conducted in Jacksonville weeks before Petitioner's trial[3]; and (5) moved for a continuance to allow further time to investigate Pena. (Doc. 27 at 10). Petitioner argues that counsel's failure to do these things was objectively unreasonable. Petitioner alleges that counsel would have discovered the newly disclosed impeachment evidence had he conducted a more thorough investigation. Petitioner further contends that because Pena was the government's "star witness," there is a reasonable probability that the jury would have acquitted Petitioner had counsel further impeached Pena's credibility with the newly disclosed evidence. The government responds that, based on the information available at the time, counsel reasonably could have decided to proceed to trial without further investigating Pena's background, and that counsel effectively cross-examined Pena using the impeachment evidence with which he was armed. (Doc. 30 at 13-15). In any event, the government argues that the new

---

[3] Pena also testified in the case of United States of America vs. Don Robert Brown, Case No. 3:03-cr-238-J-32MCR.

impeachment evidence still would not be enough to establish that Petitioner was prejudiced under Strickland. The government asserts that, even in light of the new information about Pena, the remaining evidence was sufficiently strong that there is not a reasonable probability that the jury would have acquitted him.

## II. Discussion

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both (1) that counsel's performance was deficient, and (2) that as a result of counsel's deficient performance, the petitioner suffered prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). In determining whether counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994). To show that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036-37 (citing Strickland, 466 U.S. at 694). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Id. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's]

ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

### A. Whether counsel's investigation was deficient for not uncovering Brady material

Because "[j]udicial scrutiny of counsel's performance must be highly deferential," Strickland, 466 U.S. at 689, the petitioner must show that particular acts or omissions of counsel were outside the wide range of professionally competent assistance, id. at 690. The Court must evaluate counsel's performance in the context of the circumstances as they existed at the time, and not allow hindsight to distort its judgment. Id. at 689. Thus, the Court must resist the temptation to find that counsel performed deficiently simply because new Brady or Giglio evidence later surfaced concerning Pena.

Several principles guide the evaluation of counsel's effectiveness: (1) a strong presumption exists that counsel's performance might be considered sound trial strategy; (2) strategic choices made after a thorough investigation are virtually unchallengeable, and (3) those strategic choices made after less than complete investigation are reasonable to the extent that reasonable professional judgments support the limitations on investigation. Id. at 689–91. "[N]o absolute duty exists to investigate particular facts or a certain line of defense." Chandler v. United States, 218 F.3d 1305, 1317 (11th Cir. 2000). Examining the reasonableness of counsel's investigation must take into account that the attorney "does not enjoy the benefit of unlimited time and resources." Id. at 1314 n.14 (citing Rogers v. Zant, 13 F.3d 384,

9

387 (11th Cir.1994)).  Thus, attorneys must make investigative decisions that consider how to economize finite resources, which not only include limited time, but also limited money and manpower.  As such, an attorney's decision to curtail his or her investigation is not per se ineffective if the decision to discontinue further inquiry is itself reasonable.

Trial counsel did not perform unreasonably by not undertaking a more extensive search of his own for undisclosed Brady or Giglio material.  The government has the duty to disclose exculpatory or impeachment evidence within its possession "even though there has been no request by the accused."  Strickler v. Greene, 527 U.S. 263, 280 (1999) (citing United States v. Agurs, 427 U.S. 97, 107 (1976)). "Defense counsel is entitled 'to rely on… the presumption that the prosecutor would fully perform his duty to disclose all exculpatory materials[.]'"  Carr v. Schofield, 364 F.3d 1246, 1255 (11th Cir. 2004) (quoting Strickler, 527 U.S. at 284).[4]  Additionally, defense counsel is entitled to rely on a prosecutor's implicit representation that he has provided all such evidence.  See Carr, 364 F.3d at 1255 (11th Cir. 2004); see also Jewett v. United States, 596 F. App'x 811, 815 (11th Cir. 2015) ("[P]erhaps a more persistent or skeptical attorney might not have given up.  We cannot say, however,

---

[4]  Strickler discussed the defendant's right to presume that a prosecutor has fulfilled his or her Brady obligations in the context of discussing excusable procedural default.  However, the notion that the defense has the right to presume that the prosecution has abided by its Brady obligations applies with equal force when evaluating the reasonableness of counsel's investigative decisions.  Indeed, the Fifth Circuit Court of Appeals has applied this presumption in the ineffective assistance context on at least one occasion.  See Mathis v. Dretke, 124 F. App'x 865, 879 (5th Cir. 2005).

10

that it was objectively unreasonable for Jewett's attorney to rely upon the Texas agency's representation and stop looking for documentation.").

Here, the Court issued a standing order directing the government to disclose Brady material no later than five days before trial. (Crim. Doc. 12). Five days before trial, the government purported to fulfill its Brady obligations by disclosing that Pena was a well-compensated informant, whom the government had paid $168,000 over a three-year period in exchange for information, and that Pena had a prior conviction for trafficking heroin. (See Crim. Doc. 95 at 46-47). Counsel objected that the government's disclosures were incomplete under Brady and Giglio, but the Court ruled there had been no such violation and assured counsel that if there was more exculpatory or impeachment material, the government would have disclosed it as required by law. (Id. at 45-52). Counsel agreed with that assurance, and stated he did not believe that the government was intentionally concealing Brady or Giglio evidence. (Id. at 52). Counsel did not seek a continuance to conduct further investigation on Pena, and he proceeded to trial, where counsel took advantage of the Brady information that the government had provided. (See id. at 274-86; Crim. Doc. 97 at 67). Counsel's decision not to delay the trial in order to conduct additional investigation was not unreasonable, however, because counsel could reasonably rely on the presumption, as well as the prosecution's implicit representation, that the government had disclosed all Brady and Giglio material. By the same token, neither was counsel ineffective for not moving earlier to compel disclosure of Pena's identity, for not demanding Pena's DEA suitability reports, or for not scouring court records

11

for Pena's testimony in previous, unrelated cases, because counsel were entitled to rely on the presumption that the prosecution would turn over any Brady or Giglio evidence.[5] Given that defense counsel must conduct investigations on limited resources, it was not beyond the pale for counsel to conserve those resources by not spending them on independently searching for information that they should have been able to trust the government to divulge.

Petitioner points out a variety of things counsel could have done to dig for more Brady or Giglio material on Pena, such as moving to continue the trial once the government disclosed Pena's identity, or moving to compel disclosure of Pena's identity at an earlier point in the case. "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler, 218 F.3d at 1313 (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)). However, "[o]ur decisions lend no support to the notion that defendants must scavenge for hints of undisclosed Brady material when the prosecution represents that all such material has been disclosed." Banks v. Dretke, 540 U.S. 668, 695 (2004). "The presumption, well established by tradition and experience, that prosecutors have fully discharged

---

[5] Although defense counsel were alerted five days before trial that Pena had testified in sixteen other unnamed cases, including a trial in front of this Court that occurred shortly before Petitioner's trial (see Crim. Doc. 96 at 47-49), there was no indication at the time that counsel would find any Brady or Giglio-type evidence that was new or different from the government's Brady disclosures in the instant case. While diligent counsel could have verified this, the failure to do so is not constitutionally deficient representation.

12

their official duties is inconsistent with the novel suggestion that conscientious defense counsel have a procedural obligation to assert constitutional error on the basis of mere suspicion that some prosecutorial misstep may have occurred." Strickler, 527 U.S. at 286-87 (internal quotation marks and citation omitted). The duty to disclose Brady or Giglio material lies with the government and the government alone, not defense counsel.

Ineffectiveness means that "trial counsel's error [was] so egregious that no reasonably competent attorney would have acted similarly." Harvey v. Warden, 629 F.3d 1228, 1239 (11th Cir.2011). Here, the government disclosed Brady and Giglio material. Because the government did turn over damaging impeachment regarding Pena (i.e., a previous felony drug conviction, that he stood to gain 20% of the drug money seized from the case, and that the DEA had paid him $168,000 for his services), counsel could be excused for believing that the prosecution was fulfilling its Brady responsibilities.[6] The Court cannot say that no competent lawyer would have declined to expend further time and resources conducting an independent search for Brady and Giglio material when he is entitled to presume that the government had disclosed

---

[6]  Counsel impeached Pena's general credibility with evidence that he had a prior felony conviction for trafficking heroin, that the DEA was paying him, on average, $56,000 a year for information, and that Pena would otherwise struggle to find a job that paid that well, especially given that he had a felony conviction on his record. (See Crim. Doc. 95 at 274-86; Crim. Doc. 97 at 67). Pena admitted under cross-examination that his job was lucrative, and that he stood to gain 20% of the drug money seized in the case. Pena also admitted under cross-examination that if he didn't "make cases," he faced the choice of "go[ing] without eating" or returning to his old job "driving a truck and lifting boxes." (Id. at 285-86). Counsel therefore used the government's disclosures to create the inference that Pena had a financial motive to tailor his testimony in the government's favor.

all such matters.[7]  Accordingly, the Court declines to find that defense counsel was ineffective for not uncovering additional Brady information on Pena.  Because the Court does not find that counsel's investigation was constitutionally deficient, it need not proceed to Strickland's prejudice prong.  Strickland, 466 U.S. at 697.

### B. Evidentiary Hearing and Ultimate Disposition

At bottom, Petitioner's allegations are best analyzed under the framework of Brady and Giglio.  Petitioner did attempt to raise Brady and Giglio claims in his second motion to vacate in Case No. 3:11-cv-1144, but the Court felt constrained by precedent that the motion qualified as a second or successive petition, and so dismissed it without prejudice to seeking permission from the Eleventh Circuit to file a successive petition.  Although the Court granted relief under Rule 60(b) and agreed to reopen the first § 2255 proceeding, the Court also felt constrained by precedent, particularly Gonzalez v. Crosby, 125 S. Ct. 2641 (2005), that Petitioner could not raise new claims following Rule 60(b) relief, but could only revisit the claims originally raised in the first § 2255 petition.  Through no fault of his, Petitioner did not allege a straight Brady or Giglio violation in his original § 2255 motion, or plead facts in support of such a claim.  Instead, Petitioner argued that trial counsel were ineffective

---

[7]  The Court expresses no opinion on the ultimate merits of any underlying Brady or Giglio claim that Petitioner might later raise.  Relief is denied because Petitioner alleged ineffective assistance of counsel for not uncovering additional Brady and Giglio information, but he did not allege in his initial § 2255 motion that the government actually committed a Brady or Giglio infraction.  (See Doc. 1; Doc. 2).  Accordingly, the Court's scrutiny is focused on counsel's actions and omissions, which unlike the government's actions and omissions, are entitled to Strickland's deferential standard.

for not uncovering <u>Brady</u> and <u>Giglio</u> evidence.  Therefore, for purposes of this order, the Court was limited to evaluating Petitioner's request for relief under the claim of ineffective assistance of counsel.  Because counsel were not constitutionally deficient for not uncovering evidence that it was the government's responsibility to disclose, relief under this claim is not appropriate.

The Court carefully considered whether to conduct an evidentiary hearing, but ultimately determined, for the reasons set forth above, that ineffective assistance of counsel is not the appropriate framework for considering relief on these facts. Without prejudging the allegations, Petitioner's free-standing <u>Brady</u> and <u>Giglio</u> claims appear to deserve attention (<u>see</u> Case No. 3:11-cv-1144, Doc. 3), but at this point the appropriate forum is the Eleventh Circuit, which can either determine on appeal in Case No. 15-11377 that this Court erred in dismissing Petitioner's second § 2255 motion seeking adjudication of the <u>Brady</u> claims, or authorize Petitioner to file a second or successive motion to vacate pursuant to 28 U.S.C. § 2255(h)(1).  It may be that a situation such as this, where through no fault of Petitioner's he did not bring the <u>Brady</u> claims in the first § 2255 motion, are precisely what § 2255(h)(1) was designed to address.  If the Eleventh Circuit grants permission for Petitioner to file a second motion to vacate, this Court is prepared to hold an evidentiary hearing on his <u>Brady</u> and <u>Giglio</u> claims.

Accordingly, it is hereby

**ORDERED:**

1. The second ground of Petitioner's Motion to Vacate is denied for the reasons set forth herein.

2. As Petitioner does not reargue the first and third grounds of his initial Motion to Vacate (see Doc. 1 at 4), those grounds are denied for the same reasons set forth in the original order denying relief (see Doc. 12 at 4-5, 7-8).

3. Petitioner Gino Velez Scott's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 1) is therefore **DENIED**.

4. The Clerk of Court is directed to enter judgment against Petitioner and in favor of the United States, and close the case.

**CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS GRANTED**

IT IS FURTHER ORDERED that Petitioner is entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue… only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Petitioner has made the requisite showing in these circumstances. Although the Court believes that responsibility for the failure to uncover the new <u>Brady</u> and <u>Giglio</u>-type evidence does not lay at the feet of defense counsel, the Court also recognizes that reasonable jurists might find this ruling debatable. Additionally, because Petitioner's appeal from the dismissal of his second § 2255 motion is already before the Eleventh Circuit (<u>see</u> Case No. 3:11-cv-1144-J-32PDB; Eleventh Circuit Case No. 15-11377), the Court considers it prudent to grant a certificate of appealability in this case to allow for comprehensive appellate review of the issues in Petitioner's case. Therefore, the Court grants a certificate of appealability on the following question:

> Whether, under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), counsel's investigation amounted to constitutionally ineffective assistance for not uncovering before trial the newly-disclosed <u>Brady</u> and <u>Giglio</u> evidence concerning the government's confidential informant, Freddy Pena.

Because Petitioner is entitled to a certificate of appealability, he is also entitled to appeal in forma pauperis.

**DONE AND ORDERED** at Jacksonville, Florida this 27th day of January, 2016.

TIMOTHY J. CORRIGAN
United States District Judge

lc 19

Copies:

Counsel of record
Petitioner Gino Velez Scott